IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHER DISTRICT OF OHIO
WESTERN DIVISION

Central Ohio Alternate Program, *et al.*,    Case No.3:06CV01083

    Plaintiffs,

  v.

Teresa L. Ballinger, *et al.*,    ORDER

    Defendants.

This is a suit by the Central Ohio Alternative Program (COAP), a state certified and licensed alcohol and drug addiction driver intervention program, and its owner, Richard Rees, against Teresa Ballinger, Judge of the Marion, Ohio, Municipal Court, the City of Marion, and John Doe defendants. Before the events giving rise to this suit, Judge Ballinger and her predecessors referred offenders convicted of driving under the influence [DUI] to COAP as an alternative to an otherwise mandatory five-day jail term.

Pending is Judge Ballinger's motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, the motion will be granted.

**Background**

When Judge Ballinger ran for election in 2005 after earlier having been appointed to the Marion Municipal Court, the individual plaintiff and others affiliated with COAP supported Judge Ballinger's opponent. A competitor program, which shared court-ordered alternative sanction referrals from the Marion Municipal Court equally with COAP, supported Judge Ballinger.

Shortly after winning the election, the Judge sent plaintiffs a letter stating, *inter alia*, "the Court no longer needs the services of COAP for the jail, thus leaving your December classes as the final class." Judge Ballinger removed COAP from the court's approved list of alternative programs. Thereafter she referred defendants solely to the other program.

Plaintiffs bring this 42 U.S.C. § 1983 suit for declaratory and injunctive relief, compensatory and punitive damages, and attorneys' fees and costs.

## Standard of Review

When ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief can be granted, the court must construe the complaint in a light most favorable to the nonmoving party. *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998). The nonmoving party's factual allegations are accepted as true. *Id.* The court determines only whether there is evidence to support the claims of the nonmoving party; the court does not determine whether the claims will prevail. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Dismissal is only appropriate if the court determines beyond doubt that the complaining party cannot prove any set of facts in support of the claims. *Pfennig v. Household Credit Servs.*, 295 F.3d 522, 525-6 (6th Cir. 2002) (citing *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998)).

## Discussion

Plaintiffs assert three claims, alleging: 1) violation of First Amendment freedom of speech and association; 2) violation of Fifth Amendment due process; and 3) breach of contract. The defendant asserts, *inter alia*, Eleventh Amendment and common law immunity.

### I. Federal Court Jurisdiction and the Rooker-Feldman Doctrine

Judge Ballinger contends that, due to the *Rooker-Feldman* doctrine, this court does not have jurisdiction. That doctrine provides that federal courts have no jurisdiction to review and reverse state court judgments. *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *see also Exxon Mobile Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 283 (2005).

Under this doctrine, federal district courts are without jurisdiction to review constitutional claims that are "inextricably intertwined" with the state court judgments. *Feldman*, 460 U.S. at 486-87. Claims of that sort, in the Court's view, impermissibly call on a federal court to review a state court's decision and judgment. *Id.* at 483 n.16.

In the Sixth Circuit, the "inextricably intertwined" standard applies broadly. As stated in *Exec. Arts Studio, Inc. v. City of Grand Rapids*, 391 F.3d 783, 793 (6th Cir. 2004) (internal quotations and citation omitted), a "federal claim is inextricably intertwined with a state court judgment and thus implicates *Rooker-Feldman* when the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." Thus, "if the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction." *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006). The court in *McCormick* further stated, "if a third party's actions are the product of a state court judgment, then a plaintiff's challenge to those actions are in fact a challenge to the judgment itself." *Id.* at 394.

Plaintiffs allege harm from Judge Ballinger's removal of COAP from the list of rehabilitation service providers for DUI offenders. That decision is, however, only implemented when the court enters a judgment whereby, in lieu of incarceration, a specific DUI defendant is

3

referred to the other program, rather than to COAP. The actions being challenged by the plaintiffs are sentences, which are, most fundamentally, judgments. Thus, under prevailing Sixth Circuit doctrine, plaintiffs' claims against Judge Ballinger are "inextricably intertwined" with her judgments.

COAP argues, however, that, because it is not a state-court losing party, *Rooker-Feldman* does not, pursuant to *Exxon Mobile*, apply. In *Exxon Mobile*, the Supreme Court limited *Rooker-Feldman* to "cases brought by state-court losers." 544 U.S. at 284. In the Sixth Circuit "state-court losers" encompasses parties in privity with a losing state court litigant. *McCormick*, 451 F.3d at 396 ("It would be inconsistent to disallow the party in the state suit to raise a federal claim but to allow his privy to bring the exact same claim.").

COAP is not a state-court losing party, and is not in privity with a state-court losing party. Thus, the *Rooker-Feldman* doctrine does not *automatically* apply to COAP's suit against Judge Ballinger.

Nonetheless, *Rooker-Feldman* applies. In *Fieger v. Ferry*, 471 F.3d 637 (6th Cir. 2006), the named plaintiff [an attorney] was not a party in the state court cases underlying his suit. The Sixth Circuit held that *Rooker-Feldman* precluded his suit because that suit impermissibly sought "in federal court to undo a state court judgment." *Id*. at 644 n.4.

The effect of COAP's challenge, if successful, would be the same as that prohibited by *Fieger*: a state court judge's sentencing judgments would be undone in plaintiffs' favor. Because plaintiffs suit against the Judge seeks to undo her sentencing judgments, *Rooker-Feldman* deprives this court of jurisdiction over plaintiffs' claims against the Judge.

The *Rooker-Feldman* doctrine does not, however, preclude review of future actions by a state court judge. In *Fieger*, the plaintiff argued of a "real, immediate, and continuing" harm. *Fieger*, 471 F.3d at 646. The Sixth Circuit held the federal district court had jurisdiction, notwithstanding *Rooker-Feldman*, over the claim, because "the source of Fieger's alleged injury is not the past state court judgments; it is the purported unconstitutionality of Michigan's recusal rule as applied in future cases. Such a claim is independent of the past state court judgments." *Id*. Thus, this court may properly review COAP's claims that pertain to future constitutional challenges.

## II. Plaintiff Rees Lacks Standing to Sue

Pursuant to Article III, federal courts have jurisdiction over all cases and controversies arising under the United States Constitution. U.S. Const. Art. III, § 2. To have standing, a plaintiff must "allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984).

Plaintiff Rees sues individually and on behalf of COAP, pursuant to 42 U.S.C. § 1983, for violation of First and Fifth Amendment rights. A § 1983 action is personal and only the injured party can sue; thus the question arises whether COAP and Rees may both bring suit. *Jaco v. Bloechle*, 739 F.2d 239, 240-41 (6th Cir. 1984).

Plaintiff Rees is the sole shareholder and trustee of COAP. The briefs make clear that Judge Ballinger only associated with Rees through COAP and not with Rees in his personal capacity. For this reason, COAP and not Rees is the injured party.

The Sixth Circuit has stated a stockholder, even the sole shareholder of a company, cannot bring a § 1983 claim for damages suffered by the corporation. *Smith v. Martin*, 542 F.2d 688, 690 (6th Cir. 1976) ("The district court was correct in its holding that a stockholder cannot maintain an action under the Civil Rights Act for damages suffered by a corporation in which he owns shares."); *see also Ramirez v. Arlequin*, 357 F.Supp.2d 416, 421 (D.P.R. 2005), *rev'd in part on other grounds*, 447 F.3d 19 (1st Cir. 2006) ("a shareholder, even when he is the sole shareholder, does not have standing to bring an action under Section 1983 on behalf of a corporation"). Accordingly, co-plaintiff Rees' § 1983 claims will be dismissed.

Rees may not bring suit, however, this does not affect the ability of COAP to sue under § 1983. A company, even a not-for-profit company such as COAP, is a "person" under the Fourteenth Amendment and § 1983, and has standing to bring § 1983 claims for the personal deprivation of any rights. *Metropolitan Life Insurance Co. v. Ward*, 470 U.S. 869, 881 n.9 (1985); *South Macomb Disposal Authority v. Washington Tp.*, 790 F.2d 500, 503 (6th Cir. 1986) (citing *Grosjean v. American Press Co.*, 297 U.S. 233, 244 (1936)) ("A private corporation is clearly a 'person' within the meaning of the Equal Protection and Due Process Clauses . . . and within the meaning of section 1983 to constitute a proper plaintiff."). Because COAP is suing for deprivation of its rights under the First and Fifth Amendments, COAP has standing.

### III. Immunity from Suit for Municipal Courts

The dispositive issue in this case is that of judicial immunity. A state judge has two forms of immunity: Eleventh Amendment immunity when sued in her official capacity and common law absolute immunity. *E.g., McCormick, supra*, 451 F.3d at 399 n.16).

### A. Sovereign Immunity for Judge Ballinger Under the Eleventh Amendment

The official capacity claims against Judge Ballinger fail because she has sovereign immunity under the Eleventh Amendment.

The Eleventh Amendment provides that "the Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const., amend. XI. The Eleventh Amendment also extends to actions brought against a state by its own citizens. *Hans v. Louisiana*, 134 U.S. 1, 15 (1890).

Sovereign immunity applies to states, as well as government entities that act as "arm[s] of the state." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). In the Sixth Circuit, Ohio municipal courts are generally viewed as "arms of the state" under the Eleventh Amendment when sued in their official capacity. *Foster v. Walsh*, 864 F.2d 416, 418-19 (6th Cir. 1988).[1]

The general rule applies in this case. The State of Ohio provides insurance for the Judge for claims arising from her official capacity; the Ohio General Assembly determines the amount of her salary, which the State Treasury pays in part; the Ohio Revised Code establishes municipal courts; the Judge must apply Ohio state law, not laws of the locality or municipality; cases from the Ohio Court of Appeals and Ohio Supreme Court are binding on the municipal court.

---

[1] To determine whether an entity is an arm of the state, courts consider: "1) whether the state would be responsible for a judgment against the entity in question; 2) how state law defines the entity; 3) what degree of control the state maintains over the entity; and 4) the source of the entity's funding." *S.J. v. Hamilton County, Ohio*, 374 F.3d 416, 420 (6th Cir. 2004). Greatest consideration is given to whether the state treasury funds the entity and would be responsible for a judgment against the entity, and whether respecting the entity preserves the dignity of the state as an independent sovereign. *Id.* at 421.

These circumstances establish indisputably that the Marion Municipal Court is an arm of the State of Ohio, which funds the Court and controls its establishment, definition and execution of duties, and which would be liable for any judgment against the Judge in her official capacity. It is, moreover, integral to the sovereignty of Ohio that its judicial branch be respected through the protection of sovereign immunity for its municipal courts.

### B. A Municipal Court is Not a Person Subject to § 1983 Claims

A municipal court, as an arm of the state, is not a "person" subject to suit under § 1983. *See Alkire v. Irving*, 330 F.3d 802, 812 (6th Cir. 2003) ("Of course, insofar as Holmes County Court is an arm of the State of Ohio entitled to sovereign immunity, it is not a 'person' for purposes of § 1983."); *Foster v. Walsh*, 864 F.2d 416, 418-19 (6th Cir. 1988); *Jones v. Perrysburg Municipal Court*, 2006 U.S. Dist. LEXIS 44354, *5 (N.D. Ohio). For this reason, plaintiffs' claims predicated on liability under § 1983 will be dismissed. *Geller v. Washtenaw County*, 2005 WL 3556247, *8 (E.D.Mich.).

### C. Common Law Absolute Immunity for Judge Ballinger

Judges in general are absolutely immune from suits for monetary damages. *Mireles v. Waco*, 502 U.S. 9, 9 (1991). State judges are also immune from liability under 42 U.S.C. § 1983. *Pierson v. Ray*, 386 U.S. 547, 554-55 (1967).

Judge Ballinger bears the burden of showing that absolute immunity is justified and applicable. *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993).

Evil or corrupt motivation in performing a judicial act is insufficient to remove absolute immunity. *Mireles, supra*, 502 U.S. at 12. Courts focus on the general act, such as sentencing defendants, and not the specific motives and allegations of politically motivated retaliation

behind the act. *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351 (1872) ("[J]udges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly.").

COAP claims that Judge Ballinger is not entitled to the protection of absolute judicial immunity because she acted in an administrative, rather than a judicial capacity. If so, absolute immunity is not available to the Judge. *E.g., Mireles, supra*, 502 U.S. at 11-12..

1. **Judge Ballinger's Act was Judicial, not Administrative**

a. **The Nature of the Act was Judicial**

A two prong test determines whether an act is administrative (nonjudicial) or judicial: first, was the nature of the act a function normally performed by the judge, and second, was the judge acting in her judicial capacity. *Mireles*, 502 U.S. at 11-12.

To determine whether an act is judicial, a court examines "the 'nature' and 'function' of the act, not the 'act' itself." *Id.* at 13 (citing *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)). As the Sixth Circuit has stated, "even if a particular act is not a function normally performed by a judge, we are directed to 'look to the particular act's relation to a general function normally performed by a judge.'" *Barnes v. Winchell*, 105 F.3d 1111, 1116 (6th Cir. 1997) (citing *Mireles* 435 U.S. at 13). Furthermore, the scope of judicial immunity is "defined by the functions it protects and serves, not by the person to whom it attaches." *Forrester v. White*, 484 U.S. 219, 227 (1988); *see also Lomaz v. Hennosy*, 151 F.3d 493, 497 (6th Cir. 1998).

COAP asserts that its termination by Judge Ballinger was an administrative act – that the judge made a "business decision" similar to that of removal of an employee, which is an

9

administrative act not protected by judicial immunity. *Forrester, supra*, 484 U.S. at 229 (administrative acts include those "involved in supervising court employees and overseeing the efficient operation of a court").

Arguing that its relationship with the court was analogous to that of an employee, COAP asserts that it is not challenging Judge Ballinger's sentencing discretion, but rather an administrative decision to terminate COAP's services to the court.

This argument founders because any retaliatory motivation only manifested itself in Judge Ballinger's sentences when DUI offenders were referred exclusively to the other program, rather than to COAP. Sentencing is a quintessential judicial act, and absolute judicial immunity protects a judge's sentencing decisions from later challenge in a civil suit. *Cross v. Winningham*, 869 F.2d 1489, 1989 WL 14026, *1 (6th Cir.) (Unpublished disposition) (judge's "decision to sentence plaintiff to the workhouse was clearly a judicial function to which absolute immunity attached"); *see also Wilson v. Lostracco*, 221 F.3d 1337, 2000 WL 918331, *1 (6th Cir.) (Unpublished disposition); *Cameron v. Seitz*, 38 F.3d 264, 271 (6th Cir. 1994); *Frankel v. United States*, 131 F.2d 756 (6th Cir. 1942) ("deciding a case is the quintessential judicial act"). This is so even when sentencing is done in error or excess of authority. *Stern v. Mascio*, 262 F.3d 600, 607 (6th Cir. 2001).

The circumstances in *Barrett v. Harrington*, 130 F.3d 246, 258 (6th Cir. 1997), are somewhat similar to this case. In *Barrett* a litigant sued a judge for allegedly falsely accusing the litigant of stalking the judge. The judge had written letters to state and federal prosecutors requesting the litigant be investigated, because she feared he was stalking her.

The Sixth Circuit held the judge was protected by absolute immunity because there was a "direct relational nexus" between her judicial decisions and the letters. *Id*. at 259. The letters involved: "the 'case deciding process,' as the Judge wrote to express her fear that the harassment would cause her to have to recuse herself from future cases involving [litigant] - *recusal is undoubtedly an act that concerns judicial decision-making*." *Id*. at 258 (emphasis supplied).

Judge Ballinger's letter to COAP likewise directly involved the "case deciding process" – namely, her sentences. Because sentencing decisions, even if wrongful or wrongfully motivated, constitute a core judicial, rather than administrative, act, those decisions are protected by absolute judicial immunity.

### b. COAP Interacted With the Judge in her Judicial Capacity

The second prong of the judicial action-judicial immunity test is whether the parties dealt with the judge in her judicial capacity. *Mireles, supra*, 502 U.S. at 13. COAP contends that because it was not a party to any of the sentencings, it did not deal with the judge in her judicial capacity. COAP asserts judicial immunity protects against "disgruntled litigants," *Barrett, supra*, 130 F.3d at 254 (citing *Forrester*, *supra*, 484 U.S. at 225), and thus cannot protect Judge Ballinger from its suit because it is not a former litigant.

The present case is similar to that of *Cameron v. Seitz*, 38 F.3d 264 (6th Cir. 1994). In *Cameron*, a state judge ignored the advice and suggestions of a probate court employee who also represented the Youth Center, a residential treatment program for juvenile offenders. Previously, the judge had accepted the employee's recommendations, and sent offenders to the Youth Center. The judge later refused to allow the employee into the courtroom, spoke ill of the

11

employee and the Youth Center, and eventually issued a written order directing another employee to be the Center's representative in his courtroom.

When the employee brought § 1983 charges against the judge, the Sixth Circuit held absolute immunity barred the suit. Although the plaintiff was not a litigant, the court looked to the court's general function, rather than its particular acts, to conclude that the judge's actions were judicial because they related to his control over his courtroom. *Id.* at 271.

Most relevant to the present case, the Sixth Circuit in *Cameron* stated, "when [the judge] transferred [the representative's] cases to another case worker, he was controlling the proceedings in his courtroom and therefore was entitled to immunity." *Id.* at 272. Judge Ballinger was "controlling the proceedings" in her courtroom by excluding COAP, as well as exercising discretion in her sentences. As such, her acts were judicial in nature, and provide her with absolute immunity.

### 2. Judge Ballinger Acted With Subject Matter Jurisdiction

The other exception to the doctrine of absolute judicial immunity arises where a judge acts entirely without subject matter jurisdiction. When considering a claim that a judge acted without jurisdiction, "the scope of the judge's jurisdiction must be construed broadly . . . ." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978). If a judge has even limited subject matter jurisdiction, she can establish immunity. *Barnes v. Winchell*, 105 F.3d 1111, 1122 (6th Cir. 1997) ("Generally, where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes"). Though a municipal court is a court of limited, rather than general, jurisdiction, a judge of such court remains entitled to absolute immunity unless she acted "in the clear absence of all jurisdiction." *Id*. Thus, "[o]nly in the absence of subject matter

jurisdiction are judicial actors devoid of the shield of immunity." *Holloway v. Brush*, 220 F.3d 767, 773 (6th Cir. 2000).

No one disputes that Judge Ballinger properly exercised subject matter jurisdiction when sentencing DUI offenders to jail alternative programs. Judge Ballinger has jurisdiction to sentence DUI offenders as she wishes, and thus has jurisdiction to not sentence them to rehabilitation with COAP. Her decision to discontinue sentencing offenders to COAP was fully within her jurisdiction.

Because I find that Judge Ballinger acted with sovereign immunity as well as absolute immunity, it is unnecessary to examine the First Amendment and due process claims.

### IV. COAP's Breach of Contract Claim

COAP alleges the existence of a contract which guaranteed that offenders in Judge Ballinger's court would be sentenced to COAP's rehabilitation program. COAP further alleges that the failure of Judge Ballinger to sentence first time DUI offenders to COAP's program breached that contract.[2]

The alleged contract, according to COAP, was a grant application from the City of Marion to the Ohio Bureau of Community Sanctions. The grant application identified COAP as one of many entities to which the municipal court may sentence offenders. COAP does not claim it made an offer to Judge Ballinger which she accepted; rather COAP alleges it was an intended third party beneficiary of the grant awarded to the City.

---

[2] To the extent that COAP alleges that its rights to Fifth Amendment due process were violated by a breach of the contract, that claim, necessarily grounded in § 1983, fails due to Judge Ballinger's absolute judicial immunity from § 1983 claims challenging her judicial acts.

13

The defendant reasonably argues that the grant application on which COAP relies was not a contract: a grant application has the status of an offer and a finalized grant award constitutes an acceptance. *See Embury v. King*, 191 F.Supp.2d 1071, 1086-87 (N.D. Ca. 2001). A contract is formed only after a finalized grant award has received the consent of all parties. *Episcopal Retirement Homes, Inc. v. Ohio Dep't of Industrial Relations*, 61 Ohio St.3d 366, 369 (1991).

By presenting and relying on only the grant application, COAP has not shown that the parties entered into a contract.

To the extent that COAP claims to have been an intended third-party beneficiary of the putative contract, there must be evidence of an intent to benefit COAP. *Hill v. Sonitrol of Southwestern Ohio, Inc.*, 36 Ohio St.3d 36, 40 (1988). Receipt of some benefit is not enough to show an intent to benefit the recipient, and endow it with contractual rights. *Id.*

COAP was not an intended third party beneficiary: the application was not designed for COAP's benefit. The Grant Application of 2005-2006 specifically lists the goals as:

1. Reduce Commitments to State Prison or Local Jail . . .
2. Improve the Quality and Efficiency of the Local Criminal Justice System . . .
3. Provide Cost Effective Options for Safely Supervising Offenders in the Community.

(Doc. 21, Ex. 1).

These goals reflect an interest in and commitment to the community and offenders; the benefit from this grant to COAP is incidental. While the grant application contemplates that COAP might be among the providers, it does not prescribe the extent to which its services may be used, if at all. COAP's role as a state certified jail alternate program means only the Judge has

the option of sentencing offenders there in lieu of jail. COAP was an incidental beneficiary, not an intended beneficiary.

A grant application, moreover, does not supersede Judge Ballinger's judicial discretion, and cannot guarantee sentencing results, whether favorable to COAP or otherwise. The grant application itself makes clear that Judge Ballinger retained discretion to define the extent to which incidental beneficiaries, including COAP, would benefit. [Doc. 21, Ex. 1 ("When the offender is found guilty in Marion Municipal Court, the Judge makes a determination to place the offender on Community Sanctions, or refers the offender to Marion Municipal Court Community Corrections for a background investigation and recommendation . . . ")].

For the foregoing reasons, COAP's breach of contract claim fails.

## Conclusion

For the foregoing reasons, defendant's motion to dismiss plaintiffs' complaint shall be granted.

It is accordingly

ORDERED THAT plaintiffs' complaint be, and the same hereby is dismissed.

So ordered.

> s/James G. Carr
> James G. Carr
> Chief Judge